Below is an opinion of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| **Consolidated Estate of Former W2W Entities**, fka Wall to Wall Tile & Stone LLC (Case No. 19-32600, Wall to Wall Tile & Stone – Oregon LLC (Case No. 19-32599), and Wall to Wall Tile & Stone – Idaho LLC (Case No. 19-32603), | Lead Case No. 19-32600-dwh7 (Jointly administered with Case Nos. 19-32599-dwh7 and 19-32603-dwh7) |
| Debtors. | |
| **Saxum Stone LLC,** | Adv. Proc. No. 20-03085-dwh |
| Plaintiff, | MEMORANDUM DECISION DISMISSING ACTIONS FOR LACK OF SUBJECT-MATTER JURISDICTION[1] |
| v. | |
| **Lennar Multifamily Builders, LLC**, fdba LMC Construction, LLC, | |
| Defendant. | |

---

[1] This disposition is specific to these actions. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

| | |
|---|---|
| **Lennar Multifamily Builders, LLC,** | Adv. Proc. No. 20-03109-dwh |
| Plaintiff, | |
| v. | |
| **Saxum Stone, LLC**, | |
| Defendant. | |

## I.    Introduction

This memorandum decision addresses these two adversary proceedings and will be filed in both actions. The two actions involve the same two parties: Saxum Stone LLC and Lennar Multifamily Builders, LLC. In No. 20-03085, Saxum is plaintiff, and Lennar is defendant; in No. 20-03109, the parties are reversed.

After I received briefing and heard argument on Saxum's motions for summary judgment in both actions,[2] I questioned whether the court has subject-matter jurisdiction.[3] I asked for and received from both parties briefing and argument specifically on jurisdiction.[4] Saxum argues that there is jurisdiction over both parties' claims. Lennar argues that there is jurisdiction over its claims but not Saxum's.

For the reasons below, I will dismiss both actions, including counterclaims, for lack of jurisdiction, with leave to further amend.

---

[2] No. 20-03085 ECF No. 65; No. 20-03109 ECF No. 75.
[3] No. 20-03085 ECF No. 91; No. 20-03109 ECF No. 109.
[4] No. 20-03085 ECF Nos. 94–98; No. 20-03109 ECF Nos. 111–14.

Page 2 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

## II.    Background

These actions relate to the three jointly administered chapter 7 main cases of Wall to Wall Tile & Stone LLC, Wall to Wall Tile & Stone – Oregon LLC, and Wall to Wall Tile & Stone – Idaho LLC.

### A.    *Prepetition contract between debtors and Lennar*

Before the petition date, debtors had contracted to install furnishings, including quartz countertops, for Lennar in a project in Oregon, called the Glisan project, and one in Washington state, called the Kirkland project.

### B.    *Chapter 11, conversion to chapter 7, and asset sale to Saxum*

Debtors filed their chapter 11 petitions in July 2019 and converted to chapter 7 in April 2020. The next month, the chapter 7 trustee's sale of estate property to Saxum was approved.[5] In the order, the court—

- approved the terms of a proposed asset purchase agreement[6] (APA),

- said that—

    o    the sale would be "free and clear of all liens, claims, and encumbrances,"[7] and

    o    "Saxum will not have successor liability to any creditor who holds a claim as of the Closing Date except as specifically stated in the APA, and all creditors will be forever enjoined from seeking to enforce or collect any such claim from or against Saxum."[8] And

---

[5] No. 19-32600 ECF No. 378 at 5 ¶ 3.
[6] No. 19-32600 ECF No. 368 Ex. B.
[7] No. 19-32600 ECF No. 378 at 5 ¶ 3.
[8] No. 19-32600 ECF No. 378 at 5 ¶ 5.

- "retain[ed] jurisdiction to resolve any controversy or claim arising out of or related to the implementation of this Order or the transactions contemplated thereby."[9]

In the APA, the trustee agreed to sell Saxum "all of the Assets of the Estate useful in the Business, including . . . accounts receivable [and] inventory . . . ."[10] The APA defines "Assets of the Estate" as all assets of the three debtors as of the conversion date.[11]

### C. Lennar's action

#### 1. Lennar's complaint; removal

In July 2020, Lennar filed its action in the Clark County, Washington, Superior Court.[12] In an amended complaint filed there in August 2020, Lennar sought judgment for Saxum's conversion of quartz materials for the Kirkland project for which Lennar had paid debtors.[13]

Later in August 2020, Saxum removed Lennar's action to the bankruptcy court for the Western District of Washington.[14]

#### 2. Saxum's motion to remand

In September 2020, Lennar moved to remand its action to state court on several grounds, including that there was no bankruptcy jurisdiction over

---

[9] No. 19-32600 ECF No. 378 at 7 ¶ 11.
[10] No. 19-32600 ECF No. 368 Ex. B at 1 ¶ 1.1.
[11] No. 19-32600 ECF No. 368 Ex. B at 11 ¶ 16.13.1.
[12] No. 20-03019 ECF No. 1-1 at PDF 72.
[13] No. 20-03109 ECF No. 1-2.
[14] No. 20-03109 ECF No. 1.

Lennar's action because it arose solely under Washington State law and would not affect the estate's rights or liabilities.[15]

In opposition to the remand motion, Saxum argued that the bankruptcy court has arising-under and arising-in jurisdiction under 1334(b) because resolution of Lennar's complaint would require both (1) determining the nature and extent of the bankruptcy estate, which would be a core proceeding, and (2) interpreting the sale order, which would be a core proceeding under 28 U.S.C. § 157(b)(2)(N).[16] Saxum also argued that the court has related-to jurisdiction under 1334(b) over Lennar's action because Lennar had filed a proof of claim, and resolution of the conversion claim would affect the allowed amount of the proof of claim.[17]

In a reply in support of the remand motion, Lennar argued that there is no arising-in jurisdiction, because a dispute over whether certain assets were included in a bankruptcy asset sale could arise even if the sale had not been from a bankruptcy estate.[18] Lennar also argued that there is no related-to jurisdiction because resolution of the conversion claim could have no conceivable effect on estate administration.[19]

The Washington bankruptcy court denied the remand motion, finding arising-under, arising-in, and related-to jurisdiction under § 1334(b).

---

[15] No. 20-03109 ECF No. 3 at 2:10–20.
[16] No. 20-03109 ECF No. 5 at 5:1 – 6:13.
[17] No. 20-03109 ECF No. 5:6:14 – 7:4.
[18] No. 20-03109 ECF No. 6 at 4:1–17.
[19] No. 20-03109 ECF No. 6 at 4:18 – 5:2.

Page 5 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

### 3. Venue change

On November 16, 2020, Lennar's action was transferred to this district.[20]

### D. *Saxum's action*

### 1. Saxum's complaint

In August 2020, Saxum filed its complaint in this court. The complaint included claims for declaratory judgment and for judgment on account. The requested declarations were that (1) Saxum owns the amount it claims was due from Lennar to debtors on the Glisan project, which it calls an account receivable (AR), (2) Lennar gets no reduction in the AR as a result of rejection of its executory contracts with debtors, (3) the sale order and APA, including provisions that Saxum bought the assets free and clear of claims and enjoining Lennar from making any claims, binds Lennar, and (4) Lennar gets no reduction in the AR because of any damages Lennar allegedly incurred for in the Kirkland project.[21]

### 2. Lennar's motion to dismiss Saxum's action

In September 2020, Lennar moved to dismiss Saxum's complaint for lack of subject-matter jurisdiction.[22] Lennar argued that, even though Saxum bought assets from the chapter 7 trustee, Saxum's claim against Lennar does not arise out of the Bankruptcy Code (title 11 of the U.S. Code), exist

---

[20] No. 20-03109 ECF No. 13.
[21] No. 20-03085 ECF No. 1 at 7 ¶ 25.
[22] No. 20-03085 ECF No. 6.

independent of the bankruptcy cases, or affect the estate's rights or liabilities.[23]

The next month, I denied that motion.[24] I said that resolution of Saxum's complaint would require that I determine the effect of 11 U.S.C. § 363 and the terms of the sale order and the enforceability of the order provision that Saxum has no successor liability.[25]

## III. Discussion

Below, I address jurisdiction according to the elements of the bankruptcy jurisdiction statute, 28 U.S.C. § 1334(b), which gives district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." I discuss each category of jurisdiction in general before applying it to the claims and counterclaims in these actions.

### A. *"Arising under title 11"*

As the Ninth Circuit held in its 2010 decision in *In re Ray*, "[a] matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code."[26]

The arising-under provision of 1334 is similar to 28 U.S.C. § 1331, which confers jurisdiction over "all civil actions arising under the Constitution,

---

[23] No. 20-03085 ECF No. 6 at 2:11–18.
[24] No. 20-03085 ECF No. 16.
[25] No. 20-03085 ECF No. 99 at 5:17 – 6:4.
[26] 624 F.3d 1124, 1131 (9th Cir. 2010).

Page 7 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

laws, or treaties of the United States." Courts therefore "draw freely from authorities discussing the circumstances under which a case 'arises under' federal law within the meaning of § 1331."[27]

One of the rules that courts have extrapolated from 1331 to 1334 arising-under jurisdiction is the "well-pleaded complaint" rule.[28] Under that rule, as described in the Supreme Court's 1983 decision in *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*—

> a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise . . ., or that a federal defense the defendant may raise is not sufficient to defeat the claim . . ..[29]

When a complaint requests a declaratory judgment, the court must apply the well-pleaded-complaint rule not to declaratory relief, but to a hypothetical complaint for coercive relief that would have been filed in the absence of a declaratory-judgment statute.[30] That is the case whether the declaratory-judgment procedure the plaintiff invokes is state or federal.[31]

### 1. Saxum's action

Lennar does not contend that there is jurisdiction over Saxum's action.

---

[27] *In re* Miles, 430 F.3d 1083, 1088 (9th Cir. 2005).
[28] *Id.*
[29] 463 U.S. 1, 10 (1983) (internal citations omitted).
[30] Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950).
[31] *Franchise Tax Bd.*, 463 U.S. at 18.

Page 8 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

### (a) Saxum's arguments for arising-under jurisdiction over its action

### (1) Federal defenses

Saxum argues that there is arising-under jurisdiction over its action. Specifically, it argues that—

> Outside of bankruptcy law and a bankruptcy case, there are no legally recognizable state law claims for an account receivable where the executory subcontract was rejected under 11 USC § 365, where the subcontract was not assumed by the trustee and assigned to the account purchaser and where the account receivable was sold at a 11 USC § 363 (b) & (f) sale "free and clear" of all claims arising under the subcontract, as occurred in the instant case.[32]

Although it's true that state law does not furnish a claim defined in that way, asking that question is not the right level of analysis. The significance, if any, of 363 and 365 is that they might create defenses, not that they support the claim itself—a simple state-law contract claim.

Saxum then identifies many allegations in its complaint that relate to the bankruptcy cases and that would not have been necessary to state a claim under state law. But those allegations are not essential to the *claims* that Saxum is asserting. Saxum is correct that it could have pleaded its claims more simply, by alleging only the existence of the Glisan contract and Lennar's failure to pay (and, presumably, Saxum's purchase of debtors' right to collect the debt). That Saxum chose to include other allegations that were not essential to its claims, but were included to refute anticipated defenses,

---

[32] No. 20-03085 ECF No. 97 at 1–2.

does not create federal jurisdiction. The point of the well-pleaded-complaint rule is that a plaintiff cannot create federal jurisdiction by including inessential allegations in a complaint. Those allegations must be disregarded when determining subject-matter jurisdiction.

### (2)    Sale-order enforcement

Saxum also suggests that its complaint seeks to "enforce" the sale order, citing the Second Circuit's 2016 decision in *In Matter of Motors Liquidation Co.*[33] In *Motors*, the bankruptcy court exercised jurisdiction over an action seeking to enjoin claimants from asserting against an asset purchaser claims that were allegedly barred by a sale order.[34] Similarly, the Supreme Court in its 2009 decision in *Travelers Indemnity Co. v. Bailey* approved exercise of a bankruptcy court's jurisdiction to enter a supplement injunction clarifying the scope of an earlier injunction.[35]

Here, Saxum has not asked for an injunction prohibiting Lennar from doing anything, nor has Saxum moved for supplemental or clarifying main-case relief in connection with the sale order. For those reasons, *Motors* and *Travelers* are not on point.

---

[33] 829 F.3d 135 (2d Cir. 2016).
[34] *Id.* at 152.
[35] 557 U.S. 137 (2009).

**(b)** *Analysis of claims and counterclaims in Saxum's action*

**(1)    Saxum's claim 1: declaratory relief**

In Saxum's claim 1, Saxum seeks a declaration that (1) it owns the Glisan AR, (2) Lennar is not entitled to a reduction of the AR for rejection damages, (3) the sale order and APA, including the free-and-clear provision, bind Lennar, and (4) Lennar has no right to any reduction in the AR for damages related to Kirkland.

Because Saxum's claim 1 requests declaratory relief, jurisdiction depends on the hypothetical claim for coercive relief that would have existed in the absence of a declaratory-judgment statute. The claim is framed as a rebuttal, based on federal law, to a state-law defense that Lennar might assert against a state-law claim by Saxum. So in the absence of a declaratory-judgment statute, the coercive claim that would have been brought is a state-law contract claim by Saxum. If Saxum had filed a state-law contract claim "but also assert[ed] that federal law deprives [Lennar] of a defense [it] may raise," this court would lack jurisdiction.[36]

There is no arising-under jurisdiction over Saxum's claim 1.

**(2)    Saxum's claim 2: judgment on account**

In Saxum's claim 2, Saxum seeks a judgment on account for the Glisan AR. This claim is the contract claim that is the coercive counterpart to Saxum's claim 1 for declaratory-judgment relief. As with Saxum's claim 1,

---

[36] *Franchise Tax Bd.*, 463 U.S. at 10.

Page 11 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

the only federal issue is Saxum's argument that, in the words of *Franchise Tax Board*, "federal law deprives the defendant of a defense he may raise."[37]

The court lacks arising-under jurisdiction over Saxum's claim 2.

### (3)     Saxum's claim 3: quantum meruit

In Saxum's claim 3, as an alternative to Saxum's claim 2, Saxum seeks damages for quantum meruit and unjust enrichment—purely state-law theories.

The court lacks arising-under jurisdiction over Saxum's claim 3.

### (4)     Lennar's counterclaim 1: conversion

In Lennar's counterclaim 1, Lennar seeks damages for conversion of quartz for the Glisan project for which Lennar had paid.

Although the narration of this claim in Lennar's answer refers to the bankruptcy cases and the sale to Saxum, it does so only incidentally in allegations not essential to the claim. The claim arises purely under state law; it does not depend on bankruptcy law.

There is no arising-under jurisdiction over Lennar's counterclaim 1.

### (5)     Lennar's counterclaim 2: unjust enrichment

In Lennar's counterclaim 2, Lennar seeks judgment for unjust enrichment on the same facts as the Lennar's counterclaim 1. Lennar's counterclaim 2 is also a state-law claim.

There is no arising-under jurisdiction over Lennar's counterclaim 2.

---

[37] *Id.*

## 2. Lennar's action

Both parties argue that there is arising-under jurisdiction over Lennar's action.

### (a) Lennar's general argument for arising-under jurisdiction over its action

Lennar argues that the court has arising-under jurisdiction over Lennar's action because resolution of that action requires interpretation of the court's sale order. According to Lennar, interpretation of the sale order is necessary to determine (1) whether Saxum bought from the trustee the quartz materials that Lennar claims to own and (2) whether Saxum violated paragraph 6 of the sale order and Washington State law by refusing to cooperate with Lennar and provide it possession of the quartz.[38]

### (b) Lennar's claims against Saxum

#### (1) Lennar's claim 1: Conversion

In Lennar's claim 1, Lennar seeks damages for conversion of the Kirkland quartz. This claim parallels Lennar's counterclaim 1 in the Saxum action for conversion of the Glisan quartz. Lennar's claim 1 is pleaded as a pure state-law claim. The complaint does not refer to bankruptcy law. The only bankruptcy-law connection is a possible bankruptcy defense, which is not even anticipated in this claim.

There is no arising-under jurisdiction over Lennar's claim 1.

---

[38] No. 20-03109 ECF No. 114 at 3.

**(2)    Lennar's claim 2: Unfair business practices under Revised Code of Washington § 19.86.090**

Lennar's claim 2, based on the same allegations supporting claim 1, seeks damages for violating Revised Code of Washington § 19.86.090, which creates a civil action for damages for unfair business practices. There is no corresponding Lennar counterclaim in Saxum's action.

Lennar's claim 2 does include the statement that "Saxum violated and continues to violate 11 USC § 363(b) because it was not sold the LMB [Lennar] Quartz Materials but claims publicly to have purchased them despite the fact that LMB fully paid, in fact had overpaid, WTW [debtors] for the materials."[39] But Lennar does not attempt to assert a claim under 363. The relationship of the quoted statement to the Washington unfair-business-practice claim is unclear. Regardless of the meaning of the reference to 363, the claim is one under the state statute, not under 363 or any other provision of bankruptcy law.

Lennar argues that its claim 2 arises under title 11, even though the claim is expressly predicated on an identified Washington statute, because (it says) an interpretation of 11 U.S.C. § 541, which defines estate property, is essential to resolution of the claim. Lennar's claim 2, Lennar reasons, depends on the assertion that Saxum has wrongly asserted ownership of property that, according to Lennar, Saxum did not actually acquire in the

_____

[39] No. 20-03109 ECF No. 71 at 11 ¶ 49.

Page 14 – MEMORANDUM DECISION DISMISSING ACTIONS FOR etc.

sale. Because Saxum bought estate property, Lennar argues that reference to 541 is required to understand what Saxum bought and whether Saxum committed the unfair business practice of which Lennar accuses it.

When a claim is grounded in state law, the claim can be said to arise under federal law only if it raises a federal issue that is (among other things) "actually disputed" and "substantial."[40] The supposed federal issue on which Lennar relies—the need to refer to 541 to understand what Saxum bought— is insufficiently substantial to transform Lennar's explicitly state-law-based unfair-business-practice claim into one claim arising under federal law. The dispute over whether Saxum acquired the quartz materials does not turn on 541. There is no dispute that the bankruptcy estates included whatever assets belonged to debtors before conversion and excluded any assets that did not belong to debtors before bankruptcy. The point of contention is whether debtors owned the Kirkland quartz materials, and resolution of that issue does not turn on bankruptcy law.

The same is true of Lennar's allegation in the complaint that Saxum "violated" 363 by falsely claiming to have bought the quartz materials. Lennar does not assert that 363 itself forbids Saxum from making those statements. What Lennar appears to mean is that Saxum's assertions are wrongful because (according to Lennar) Saxum did not really buy the quartz materials.

---

[40] Gunn v. Minton, 568 U.S. 251, 258 (2013).

There is no actual and substantial dispute about 541 or 363 that can shed any light on whether Saxum violated Washington's unfair-business-practice statute.

There is no arising-under jurisdiction over Lennar's claim 2.

### (3)     Lennar's claim 3: unjust enrichment

In Lennar's claim 3, Lennar seeks damages for unjust enrichment based on the facts supporting Lennar's claim 1, conversion of the Kirkland quartz. Lennar's claim 3 parallels Lennar's counterclaim 2 in Saxum's action; that claim is for unjust enrichment for conversion of the Glisan quartz. Lennar's claim 3 is solely a state-law claim and does not even anticipate a federal-law defense.

There is no arising-under jurisdiction over Lennar's claim 3.

### (c)     *Saxum's counterclaims against Lennar*

### (1)     Saxum's counterclaim 1: declaratory relief

In Saxum's counterclaim 1, Saxum seeks three declarations: (1) it owns the Kirkland AR; (2) Lennar has no right to any reduction in the Kirkland AR for rejection damages; and (3) Lennar has no right to any reduction in the Kirkland AR for Saxum's continued possession of the Kirkland quartz that is the subject of Lennar's conversion claim. This counterclaim parallels Saxum's claim 1 in its action; in that claim, Saxum seeks similar declarations about the Glisan AR.

Like claim 1 in Saxum's action, Saxum's counterclaim 1 is a request for declaratory relief based on federal-law arguments that are intended to rebut defenses to what is ultimately a state-law claim.

There is no related-to jurisdiction over Saxum's counterclaim 1.

### (2)    Saxum's counterclaim 2: declaratory relief

In Saxum's counterclaim 2, Saxum seeks three declarations: (1) Lennar did not pay in full for debtors' Kirkland work and materials that Saxum possesses, (2) any Kirkland material that existed in debtor's possession at the time of the sale to Saxum was estate property sold to Saxum, and (3) Saxum has the right to possess the Kirkland materials in its possession free and clear of any claim of Lennar.

Saxum's counterclaim 2 is a request for declaratory judgment that Saxum is entitled to remain in possession of the Kirkland materials that Saxum possesses. The corresponding coercive claim is not hypothetical; it is the actual claim for conversion that Lennar has asserted. It is a purely state-law claim.

There is no arising-under jurisdiction over Saxum's counterclaim 2.

### (3)    Saxum's counterclaim 3: judgment on account

In Saxum's counterclaim 3, Saxum seeks judgment on account for the entire Kirkland AR. This counterclaim parallels Saxum's claim 2 in its action for judgment on account for the Glisan AR.

There is no arising-under jurisdiction over Saxum's counterclaim 3.

### (4) Saxum's counterclaim 4: quantum meruit

In Saxum's counterclaim 4, as an alternative to Saxum's counterclaim 3, Saxum seeks judgment for the Kirkland AR on theories of quantum meruit or unjust enrichment. This counterclaim parallels Saxum's claim 3 in its action, where Saxum seeks an award of the Glisan AR.

There is no arising-under jurisdiction over Saxum's counterclaim 4 in Lennar's action.

### B. *"Arising in . . . cases under title 11"*

In *Ray*, the Ninth Circuit held that—

> A proceeding "arises in" a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.[41]

Courts interpret "arising in" fairly strictly. It's not enough that a proceeding springs out of a transaction that happened to occur in a bankruptcy case. Rather, the proceeding must be of such a nature that it could not happen other than in a bankruptcy case. For example, in 2013, the Ninth Circuit held in *In re Wilshire Courtyard*[42] that there was no arising-in jurisdiction over a dispute between nondebtors about the tax consequences of a transaction—even though the transaction had been approved as part of a

---

[41] *Ray*, 624 F.3d at 1131.
[42] 729 F.3d 1279 (9th Cir. 2013),

chapter 11 plan.[43] "Had [the debtor] negotiated a similar deal with its creditors outside of bankruptcy, the same dispute with [the taxing agency] over whether to categorize the income as cancellation of debt income or capital gains may have arisen."[44]

Although the *Wilshire* court then found jurisdiction for a different reason—which I address below—the decision illustrates the strictness with which the "arising in" jurisdiction is construed. Even though the transaction as to which the legal consequences were disputed had actually occurred in a chapter 11 case, the fact that it *could* have occurred outside of bankruptcy meant that there was no arising-in jurisdiction.

Another example is *Ray*, in which the debtor filed an action seeking to determine the preclusive effect of a sale order on postbankruptcy litigation in a state court. The state-court action was filed by a plaintiff that had held a first-refusal right in property sold in the bankruptcy case. In state court, the plaintiff argued that the debtor, the buyer, and others had violated the plaintiff's first-refusal right by failing to disclose one of the terms of the sale. The state court "remanded" to the bankruptcy court the issue of whether the sale order barred the claims asserted in the state-court action. The Ninth Circuit concluded that the bankruptcy court had neither arising-in jurisdiction nor any other jurisdiction. That's because the state-court breach

---

[43] *Id.* at 1286–87.
[44] *Id.*

of contract claim did "not depend on an administrative matter unique to the bankruptcy process that has no independent existence outside of the bankruptcy court and could not be brought in another forum."[45]

Although on a broader reading of "arising in" the claims in Saxum's and Lennar's actions probably could be said to have arisen in the bankruptcy cases, they do not satisfy the narrow test that the Ninth Circuit has adopted. The claims literally "arose" in the bankruptcy cases in that Saxum bought the claims that it now asserts from the estates. But they are not claims that, by their nature, could only exist in a bankruptcy case. As in *Ray* and *Wilshire*, Saxum's purchase could equally have occurred outside of bankruptcy. It's true that some of the disputed issues in these actions—including Saxum's contention that that free-and-clear-sale and no-successor-liability provisions limit Lennar's ability to defend against Saxum's claims—are connected to the bankruptcy-specific nature of a bankruptcy sale. But that was equally true in *Ray*, where the bankruptcy court's sale order was said to bar the plaintiff's claims, yet the Ninth Circuit found no arising-under jurisdiction there.

There is no arising-in jurisdiction over the claims or counterclaims in these actions.

### C.    *"Related to a case under title 11"*

The test for related-to jurisdiction (other than over litigation after plan confirmation, which is not at issue here) is whether a proceeding could

---

[45] *Ray*, 624 F.3d at 1131.

"conceivably have any effect on the estate being administered in bankruptcy."[46]

Saxum argues that there is related-to jurisdiction over both actions. Lennar argues that there is no related-to jurisdiction over Saxum's action.[47] Lennar concedes that there is no related-to jurisdiction over its action.[48]

### 1.   Parties' arguments for and against related-to jurisdiction

#### (a)   *Saxum's arguments for related-to jurisdiction over its action*

Saxum argues that "any ruling in [Saxum's action] on setoff and recoupment will affect [Lennar's] general unsecured claim and therefore affect the amount of distributions to all unsecured creditors."[49]

The recoupment to which Saxum refers was raised by Lennar as an affirmative defense. Lennar wants to recoup from any amount it owes Saxum "overpayments [Lennar made] to [debtors]" and "any [other] rights and affirmative defenses [Lennar] has against [debtors] (now [Saxum]) based upon" Lennar's performance of both the Glisan and Kirkland subcontract agreements.[50] Lennar does not quantify any overpayment. Lennar also refers to its "rights to setoff," although not in a separate affirmative defense.[51]

---

[46] Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (quoted in *In re* Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005)).
[47] No. 20-03085 ECF No. 98 at 7:20–22.
[48] No. 20-03109 ECF No. 113 at 7.
[49] No. 20-03085 ECF No. 94 at 10:1–4.
[50] No. 20-03085 ECF No. 62 at 5 ¶ 23.
[51] No. 20-03085 ECF No. 62 at 3:11–12.

Lennar has the general unsecured claim to which Saxum refers because Lennar filed a proof of claim for $1,385,000.[52] Saxum has described that proof of claim as being both "for what appears to be 'Balance To Finish' cover/rejection damages"[53] and "for rejection damages associated with the Glisan Apartments Project and the Kirkland Apartments Project," without quantifying the amounts attributable to each project.[54]

Implicitly, Saxum argues that, if Lennar prevails in Saxum's action, even in part, the result could be a recovery by Lennar from Saxum, either directly from Saxum or by setoff or recoupment against the amount Lennar otherwise owes Saxum, requiring Lennar to credit the recovery against the amount of the proof of claim.

### (b)  *Lennar's arguments against related-to jurisdiction over Saxum's action*

Lennar argues that "any setoff or recoupment rights would only diminish the alleged amount owed to" Saxum.[55]

In Lennar's opening brief on jurisdiction, it also says that "it is clear from the record in the main case that the chapter 7 trustee does not expect to make distributions to general unsecured creditors."[56] Lennar cites the

---

[52] No. 19-032600 proof of claim 47-1.
[53] No. 20-03085 ECF No. 10 at 6:24–26, referring to part 4, page 32, or PDF p. 270, of the proof of claim.
[54] No. 20-03085 ECF No. 94 at 9:28 – 10:2.
[55] No. 20-03085 ECF No. 98 at 7:20–21.
[56] No. 20-03085 ECF No. 96 at 6 n.2; *see also* No. 20-03085 ECF No. 98 at 7:17–18.

trustee's first interim report filed on March 8, 2022, where the trustee said that "it is extremely unlikely that there would be funds to pay even priority claims of trade creditors."[57] Saxum's reply brief did not address the likelihood that the trustee will make any distributions to general unsecured creditors. Since the briefing closed, the trustee filed a second interim report on June 22, 2023, repeating the "extremely unlike" statement from the first report.[58]

### (c) Saxum's argument for related-to jurisdiction over Lennar's action

Saxum argues that there is related-to jurisdiction over Lennar's action because Lennar's proof of claim is based, in part, on the amount that Lennar claims to be owed by debtors for "the same quartz materials it is claiming Saxum converted."[59] Saxum also contends that Lennar's claim "will be directly affected by the outcome of its conversion claim against Saxum."[60]

Saxum has characterized Lennar's proof of claim several ways in Lennar's action, some of which overlap how Saxum characterized the claim in Saxum's action, as described in part III.C.1(a) above. In Saxum's notice of removal, it characterized the proof of claim as being partially based on "the partial pre-petition material deposit it had paid [debtors] for $109,035.15."[61] In Saxum's opposition to Lennar's motion to remand, Saxum characterized the proof of

---

[57] No. 19-32600 ECF No. 482 ¶ 6.
[58] No. 19-32600 ECF No. 552 ¶ 6.
[59] No. 20-03109 ECF No. 111 at 7:18–19.
[60] No. 20-03109 ECF No. 111 at 7:20–22.
[61] No. 20-03109 ECF No. 1 at 2: 9–11.

Case 20-03085-dwh    Doc 111    Filed 09/29/23

claim as being "for the cost of the raw materials it is claiming Saxum converted."[62] In Saxum's opposition to Lennar's October 2020 motion to dismiss for lack of jurisdiction, Saxum characterized the proof of claim as "including a claim for 'Balance to Finish' cover/rejection damages."[63]

The conversion claim to which Saxum refers is Lennar's first claim for relief in its action against Saxum, which seeks damages for conversion of the remaining Kirkland quartz materials.[64]

Implicitly, Saxum argues that, if Lennar prevails in Lennar's action, even in part, the result could be a recovery by Lennar from Saxum, either directly from Saxum or by setoff or recoupment against the amount Lennar otherwise owes Saxum, requiring Lennar to credit the recovery against the amount of the proof of claim.

### 2.    Analysis of related-to jurisdiction

It's unclear from the face of Lennar's proof of claim that it has anything to do with the conversion claim. The proof of claim refers only to a contract claim, although it's possible that there is some relationship.

Even if Lennar's claim were based on debtors' alleged conversion of the quartz materials, I cannot conclude that the disposition of the conversion claim *against Saxum* would affect the disposition of Lennar's claim against the estate. The conversion claim against Saxum is based on Lennar's

---

[62] No. 20-03109 ECF No. 5 at 1:23–25.
[63] No. 20-03109 ECF No. 6 at 2:7–10.
[64] No. 20-03109 ECF No. 71 at 10 ¶¶ 41-45.

allegation that Saxum retained possession of quartz materials that belonged to Lennar—and did so after the bankruptcy sale. Assuming that Lennar has asserted a conversion claim against the debtor, it could only possibly relate to debtors' possession of the quartz materials before the petition date. So the claims, although similar, do not overlap, and the resolution of the claim against Saxum could not affect Lennar's claim against the estates.

Even if resolution of claims by and against Lennar could affect the allowed amount of its claim, the record gives me no reason to expect that any change would affect distributions to other general unsecured creditors. As the party asserting the existence of jurisdiction, Saxum has the burden of demonstrating the factual basis for jurisdiction. Saxum has not given me no reason to disagree with the trustee's forecast that distributions even to priority trade creditors are "extremely unlikely." In the absence of expected distributions to general unsecured creditors, any change in the amount of Lennar's claim cannot affect estate administration, which removes the factual basis for related-to jurisdiction.

## IV.    Conclusion

I will dismiss the claims and counterclaims in both actions.

I acknowledge that my decision differs from the October 2020 decisions finding bankruptcy jurisdiction by the Washington bankruptcy judge in Lennar's action and by me in Saxum's action. I have a continuing duty to satisfy myself that the court has jurisdiction over an action, and this

memorandum reflects what I now understand to be a correct application of the law.

In accordance with Federal Rule of Civil Procedure (Civil Rule) 15(a)(2), I will grant both parties leave to file amended complaints within 14 days after entry of the dismissal order. If Saxum does not timely file an amended complaint, I will enter judgment dismissing its action, including Lennar's counterclaims. If Lennar does not timely file an amended complaint, I will remand its action.

Under Civil Rule 15(a)(3), an answer to any timely filed amended complaint will due 14 days after service of the amended complaint. In accordance with Civil Rule 12(a)(1)(B), I will shorten the deadline to answer any counterclaim to 14 days after service of the counterclaim.

### #